FILED ___ LODGED
___ RECEIVED ___ COPY
JUL 10 2009
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ M DEPUTY

1  Dave Green

2  Webtrading Co.

3  2549 W Shinnecock Way

4  

5  Anthem Arizona  85086

6  Tel: 623-551-5090

7  Email: commodities@gmail.com

8  Pro Se Defendant

9                    United States District Court

10                        District of Arizona

11 NOLO,            Plaintiff,    )  Civil Action No. **CIV-09-1220-PHX-ROS**

12       vs.                      )
                                  )  Plaintiff   Defendant's Answer to
13 Webtrading Co., Dave Green,    )  Complaint:
                                  )
14       Defendant                )     Webtrading Co., Dave Green, re:
15                                )  Registered Trademark Infringement
                                  )
16                                )     Defendants   False Designation of
17                                )  Origin
                                  )
18                                )             Violation of
                                  )  15USC1125(d) and 15USC11259 ( c)
19                                )

20

21

22 ─────────────────────────────

23       Pro Se Defendant hereby respectfully submits the following answer to plaintiffs overall false and mostly made-up false, twisted, exaggerated and deceitful assertions in
24 NOLO's desperate attempt to reverse hijack our domain name and website:

25

26 **Defendant's Answer re: Registered Trademark Infringement**

1   First, let me say we have a complaint about the overall format of all of attorney Zalon's pleadings in that all pages are printed on both-sides, making it difficult for defendant to read and follow and putting defendant at a disadvantage in his understanding and his answers, especially because I am pro se. I was told by district court personnel the double-sided format used by Zalon violates the local rules which call for one-sided pleadings to be used.

Admit, Re Complaint Page 1, Line paragraph 1,

Deny, Pg 1, paragraph 2. Our present organization is known as a sole proprietorship business.

Deny Pg 1, paragraph 2. The address stated by plaintiff is not correct and has not been our address in more than 2 years.

Admit Pg 2, paragraph 1. 2549 W Shinnecock Way is our correct home-office address

Insufficient information to admit or deny Pg 2 paragraph 3

Deny Pg 2, paragraph 4. There are no folks here who could be John Does 1 thru 5.

Partially Deny pg 2 paragraph 5, There are no infringing acts committed though we Admit to be doing business in Arizona.

Insufficient information to admit or deny. Pg 2 paragraph 6, line 21-22.

Deny Pg 2 paragraph 6, line 23-24. Amount of controversy is said to be $75,000 but not valid but only stated to justify the District Court hearing the case (due to the Federal rules).

Admit Pg 2 paragraph 6, line 25-26, Some events have taken place in Arizona.

Insufficient information to admit or deny. Pg 3 paragraph 7.

Deny Pg 3, paragraph 8, lines 11-15. How could the NOLO trademark be used since 1972 when its Federal trademark was not applied for until 2005 and first registered in 2006?

Deny Pg 3, paragraph 8, lines 16-18. NOLO is not a famous trademark. Too recent a trademark to be considered truly Famous and is mostly known in the legal forms industry.

Admit Pg 3, paragraph 9, lines 19-21.

Deny Pg 3, paragraph 9, lines 22-24, The header on each page does not claim NOLO as a Trademark. In fact, nowhere on the website pages we checked is it mentioned that NOLO is a trademark. When the mouse is moved over the Nolo icon in the header the ALT text only say's "Nolo Logo"

Insufficient information to admit or deny, Pg 3, paragraph 10.

Insufficient information to admit or deny, Pg 4, paragraph 11.

Deny Pg 4, paragraph 12. Lines 13-15. We registered the domain NoLo.org without an intention to sell it and registered it for 100% legitimate purposes to offer options trading information and sell an options trading trader training course, written by a 3rd party.

Deny Pg 4, paragraph 12, lines 18-19. There is no way site visitors could mistake our website for <u>nolo dot com</u> since it is in a totally different category having nothing at all to do with plaintiffs business which involves selling online legal forms and associated legal products and legally related services.

Deny Pg 4, paragraph 12, lines 19-21. Our NoLo.org website does not have "paltry content" as falsely and with insult said by Mr. Jules D. Zalon and NOLO plaintiff. The content is said in a genuine way about how to possibly successfully trade the commodities options markets and gives extremely valuable and highly acclaimed advice about successful trading with NoLo being an acronym which means "No Losing Options"

Neither Admit or Deny. Pg 4, paragraph 12, Lines 21-23. Because it is not applicable but either due to the search results from Google or being the result of typo errors committed by 3rd party webmasters, who apparently in error used our URL Nolo dot org URL instead of Nolo dot com's URL. We are not responsible in any way for loss of traffic to <u>nolo dot com</u> resulting from various typo errors made by the 3rd party website webmasters who we obviously have no control over, involvement with, or know.

Deny Pg 4, paragraph 12, line 23-24. Plaintiff did not contact us "promptly" as falsely claimed since we have been using the domain and website for a number of years without any prior contacts until April 2009. In addition, the recent request to hand-over the domain was based on the allegation it was "infringing" and we promptly advised Mr. Zalon it was not infringing and gave the reasons.

Insufficient information to admit or deny Pg 5, paragraph 13.

Defendant's Answer re: Registered Trademark Infringement

3

Deny Pg 5, paragraph 14. NOLO was not registered a s trademark until May 2006. In addition, defendant has no knowledge about the NOLO products mentioned in this paragraph.

Deny Pg 5, paragraph 15. In our humble opinion Nolo does not have a widely recognized secondary and distinct meaning, especially in the fields mentioned. According to defendants recent research since the date of the lawsuit the few people who have heard of <u>NOLO</u> relate the nolo name to online legal forms only.

If the word NOLO is so well known it begs the questions as to why the U.S. Trademark Office allowed the Mark "NOLO" Serial Number 3603636 to be newly registered on Apr 7, 2009 by Mr. Bryan Phan, an individual having no connection to plaintiff and in a different trademark category. It is also interesting plaintiff apparently did not object to the trademark registration during the opposition period or possibly they did object but it was not allowed by USPTO.

Admit Pg 5, paragraph 16.

Deny Pg 6, paragraph 17. There is no infringement since our Nolo.org is in a completely diverse category and we are not selling legal forms or related products on our website.

Deny Pg 6, paragraph 18. Nothing was done willfully or with knowledge of any rights the defendant claims to have. There was no attempt to deceive, misleads or misappropriate anything including reputation or goodwill, as falsely claimed.

Insufficient information to admit or deny. Pg 6, paragraph 19.

Deny Pg 6, paragraph 20.

Deny Pg 7, paragraph 21. Since our acronym use of Nolo is in a very diverse category of product and services compared to plaintiff there is no infringement possible.

Deny Pg 7, paragraph 23. It is a blatant falsification to say our website description and representation may be somehow sponsored by or affiliated with plaintiff. That is a complete and total fabrication by Mr. Zalon and NOLO which the Court can plainly see is a lie by looking at the two websites. There is no false description of origin. Where is it said Mr. Zalon? Plaintiff sanctions would be appropriate for the blatant fabrications which in effect are a mockery of the District of Arizona Court. Furthermore, how can visitors be confused when the products we are offering are completely different than <u>NOLO</u>'s products? NOLO does not offer for sale trading courses about how to win at options trading as sold by <u>nolo dot org</u> site.

1    Deny Pg 8, paragraph 25. No tarnishment is possible since the goods and services, usage and trademarks are in diverse categories and the NOLO mark was registered after defendant's use of the nolo dot org website and its NOLO acronym use, meaning 'No Losing Options.'

Admit Pg 8, paragraph 30. Nolo.org was registered March, 2003 which was 2-years before plaintiff applied for its NOLO trademark and 3 years prior to NOLO's registration date.

Deny Pg 8, paragraph 31 on the grounds Webtrading did not know the NOLO mark was Famous and in addition NOLO was not registered as a Federal trademark until 2006. Plus nolo.org usage is in a much different category vs plaintiff NOLOs use.

Deny Pg 9, paragraph 32. Since Nolo.org is used in a totally diverse category vs the NOLO mark and no reference is made to the NOLO mark it means no confusion is possible.

An obvious example of that involves the example mark 'Apple Computer' where there could be URL of Apple.org selling farm apples, or Apple.us perhaps selling the services of Apple Plumbing Company, and Apple.biz possibly the web site belonging to Apple Electrical contractors, and Apple.net perhaps the site of the Apple Bakery Company. Those random and arbitrary examples of usage are non-infringing on the Apple Computer mark since they are used in different categories as long as they do not offer computers for sale on the example websites.

Deny Pg 9, paragraph 33. Refer to the above.

Deny Pg 9, paragraph 34. There has been no intent to divert Internet users from plaintiff's site.

Admit Pg 9, paragraph 35.

Deny Pg 9, paragraph 36. There was no Bad Faith attempt to profit from the NOLO mark.

Deny Pg 9, paragraph 37. There was no attempt to attract and divert Internet users from plaintiff's web site to our nolo.org.

Deny Pg 9, paragraph 38. False assertions again. Defendant registered the acronym domain to make an acronym website about commodities options trading which defendant quickly put online. We never had a website up related in any way to plaintiff products or services NOLO offers, which are not related to our products in any way.

Defendant's Answer re: Registered Trademark Infringement

5

Deny Pg 9, paragraph 39. Defendant does in-fact claim strong intellectual property rights to both the nolo.org domain and its copyrighted instructional course and copyrighted website content about its unique commodity options trading methodology.

Deny Pg 10, paragraph 40. In this case, the marks are in diverse categories. Plus, to be found guilty of cybersquatting three separate burdens of proof are required. All three must be clearly violated for a case to stand.

Furthermore, the World Intellectual Property Organization and National Arbitration UDRP rules are clear and verifies no Cybersquatting violation by defendant. Here is the UDRP policy in use:

**What are the provisions of the policy?** Under the UDRP, domain-name disputes must generally be resolved in the same way as any other conventional dispute: by mutual agreement, court action, or voluntary arbitration. Without a court order or consent of the registrant, a registrar will not cancel, suspend, or transfer a domain name. The UDRP also established an administrative procedure for speedy, low-cost resolution of a specific category of disputes: those arising from abusive, bad faith registrations of domain names. In such cases, – commonly called "cybersquatting" – a holder of trademark rights initiates the administrative procedure by filing a complaint with an approved dispute-resolution service provider.

In order to have the domain name transferred or cancelled, the trademark holder must establish (1) that he has a legally recognized trademark in a name that is identical or confusingly similar to the domain name; (2) that the current registrant of the domain name has no legitimate rights in the name; and (3) that there has been some evidence of bad faith or abuse.

Plaintiff must establish all three of the above to be true to win a case. None of the 3 can fail under the UDRP process. All three elements must succeed.

Rule (1) fail since the NOLO trademark was registered well after the nolo.org domain was registered and put to good faith use. In addition, being in a much different trademark category also makes rule (1) not applicable.

Rule (2) That one clearly fails since defendant does in fact have a legitimate interest in the domain and used the domain for both sales of their commodity options trading course, and other commodity trading products and services, plus we also get some income from Yahoo who advertises trade related services of others on our site.

Rule (3) There has been absolutely no evidence of bad faith or abuse of any kind whatsoever. Bad faith use has without question never taken place by any stretch of even Mr. Zalon's heavily biased and seemingly twisted imagination.

**Defendant's Answer re: Registered Trademark Infringement**

Deny Pg 10, paragraph 41. We are not diverting visitors or selling products related to their NOLO Mark so no need to restrain us from operating our trading business and website.

Deny Pg 10, paragraph 42. A multiplicity of proceeding is not needed. Most domain disputes are routinely handled by WIPO or NFA which is much more low cost and faster than the Federal Court. We are alleging the only reason attorney Jules Zalon took the made-up heavily fabricated case to Federal Court was because he realized client NOLO would easily lose a case at WIPO or NFA because we have seen evidence Mr. Jules Zalon is in fact a Domain Dispute Panelist or Arbitrator and therefore is intimately familiar with the UDRP rules and due to an almost guaranteed loss there he took this blatant reverse hijacking attempt to the Federal Court.

Mr. Jules Zalon and NOLO was allegedly counting in intimidating defendant with the high pressure of a Federal Court case. In fact, Mr., Zalon sent myself Dave Green and Webtrading a threatening and intimidating letter dated June 18 2009 along with the lawsuit papers in which he warns me I need to hand over my domain name nolo.org or it could possibly cost me $172,000 in legal costs and legal fees. That is a blatant attempt by Zalon and Plaintiff to intimidate and scare me into submission. Sanctions again plaintiff seem warranted for such harassment and intimidation, especially since he was already aware I was 100% pro se.

Deny Pg 10, paragraph 43. 1a. Deny. Any possible confusion is not caused by nolo.org but may be attributable to 3rd party webmasters who appear to have made typo errors with incorrect web-links. Plaintiff can easily contact them and have the errors corrected. Defendant is not responsible for that aspect in any way.

Deny Pg 11, paragraph 43. 1b. We have never used plaintiff's trademark name except in an acronym sense only related to our nolo.org site, having nothing to do with plaintiff trademark.

Deny Pg 11, paragraph 43. 1c. see above.

Deny Pg 11, paragraph 43. 1d. We have never done any of that and are not responsible for how the search engines index the pages or how the public does web searches.

Deny Pg 11, paragraph 43. 1e. We have not done that and since the trademarks are totally diverse and in different business categories it could not cause confusion.

Deny Pg 12, paragraph 43. 1f. We have never and would not infringe the trademark.

Defendant's Answer re: Registered Trademark Infringement

7

Deny Pg 12, paragraph 43. 1g. We have never stated or implied nolo.org is associated with NOLO in any way nor would we ever do that. It is a totally different business and product so it makes no sense that would ever be done.

Deny Pg 12, paragraph 43. 1h. We have never done anything which would cause confusion.

Deny Pg 12, paragraph 43. 2. A list of our other websites is not warranted since we have done nothing wrong. Furthermore, we can certify now under oath we have no other sites or domains which contain the word nolo or any variation of the word nolo, including typo versions. Nolo dot org is our only domain using the word nolo and only website with the word nolo or any similar or related word.

Deny Pg 12, paragraph 43. 3. Nolo.org is our trading products acronym name having no relationship to nolo dot com or NOLO trademark and there has been no infringement in any way.

Deny Pg 12, paragraph 43. 5. Not warranted since there is no trademark infringement.

Deny Pg 12, paragraph 43. 6. The so called acts were not unlawful in any way.

Deny Pg 12, paragraph 43. 7. There has been no damage.

Deny Pg 12, paragraph 43. 8. There has been no intentional or unlawful act.

Deny Pg 12, paragraph 43. 9. This does not seem applicable at this time.

Deny Pg 12, paragraph 43. 10. No wrongdoing so our paying costs and attorney fees are not warranted.

Deny Pg 12, paragraph 43. 11. Can't imagine what that could be since nothing infringing or unlawful has taken place.

As a side-note to this case, defendant firmly believe the reason NOLO hired famous celebrity attorney Jules Zalon and decided to proceed in Federal Court was based in the attempt to mostly intimate Dave Green into submission and cave-in to NOLO's blatant and bold reverse domain hijacking attempt since they knew they would lose using other dispute methods routinely used by others. We know NOLO has a right to file in Federal Court but why would they when they could have simply gone to WIPO or National Arbitration Forum where the cost would only be about $1,500 and a fast case would be heard, instead of this costly case and hiring the celebrity lawyer Jules Zalon? The answer is fairly obvious. It was based on intimidation and threats such as the $172,000 Jules Zalon warned me I may need to pay in his letter, attached – Exhibit A.

**Here is information about Mr. Jules D. Zalon** found using Google – Jules Zalon is an attorney specializing in the areas of entertainment, trademark and copyright law. His clients have included music industry notables Van Halen, Rush, Michael Jackson, Willie Nelson, Iron Maiden, Duran Duran, Judas Priest and Dave Matthews, as well as entertainers Pee Wee Herman, Pat Cooper, and The Three Stooges. Zalon states he has also represented writers, composers, theatrical and record producers; Zalon said he also litigated commercial, copyright and trademark cases for Billy Joel, Willie Nelson, Van Halen, Michael and Janet Jackson, Robert Crumb, Dennis Rodman, Spider Lockhart and scores of other entertainers and personalities. He has represented sports personalities, including Dennis Rodman, independent filmmakers, and numerous theaters and theater personalities. Prior to launching his own practice, he was an attorney at Ashley Famous Agency, currently known as ICM, and at Cadence Industries (Marvel Comics).

Dated this July 10, 2009

*[signature]*

2549 W Shinnecock Way

Anthem AZ 85086

Webtrading Co & Dave Green

Pro Se Defendant

Defendant's Answer re: Registered Trademark Infringement

**JULES D. ZALON**  ATTORNEY AT LAW
20 CURTIS AVENUE ▪ WEST ORANGE, NEW JERSEY 07052
973-324-2444
MEMBER N.J. & N.Y. BARS  FAX: 973-324-2180

<u>**To Be Delivered by Process Server**</u>

June 18, 2009

Mr. Dave Green
2549 W. Shinnecock Way
Phoenix, Arizona 85086

Re: Nolo v. Webtrading Co. and Dave Green – 09-1220 PHX ROS

Dear Mr. Green:

You are presently being served with a copy of all the litigation papers in the captioned matter. The papers include an application for a preliminary injunction. You of course have the absolute right to contest the application; and I urge you to consult an attorney, given the seriousness of the matter. However, I hope you – and your attorney – will take a moment to think over the following offer:

If you are willing to give up your claim to the URL <nolo.org>, and immediately assign it to Nolo, we will waive any claim for statutory damages, costs, and attorneys' fees, all of which are available remedies, should we prevail at the conclusion of this lawsuit. And I believe that we will certainly prevail, given the fact that NOLO is a famous trademark and your use clearly shows a bad faith intent to profit from your cybersquatting. (It is unnecessary for me to explain my reasoning in this letter. It is sufficiently set out in the memorandum of law that you now have in your hands.)

In deciding your course of action, you should be aware that if we are successful in this lawsuit, we may be entitled to some or all of the following relief:

> Statutory damages in an amount not less than $1,000.00 nor more than $100,000.00;
>
> Full costs of the lawsuit;
>
> Reasonable attorneys fees.

On the matter of attorneys' fees, my regular fee is $350.00 per hour; I have already spent more than 30 hours on this matter, and the "meter" is running. I just won summary judgment in another infringement case, after spending more than 300 hours on it and I have a motion for attorneys' fees pending in that case, where I am seeking a total of $172,000.00 in costs, fees and disbursements.

Under the circumstances, I believe that our offer is extremely generous, and you will be making a big mistake by rejecting it, because if you don't accept it right now – that is, if you force us to proceed with the preliminary injunction hearing – the offer will be deemed withdrawn; <u>and we will not make the offer again</u>. You only get one bite of this apple.

I trust that you will do what you feel is best.

Very truly yours,

Jules D. Zalon

JDZ/glk