IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NOLO,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Webtrading Co. et al.,<br><br>　　　　Defendants. | No. CV-09-01220-PHX-ROS<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Preliminary Injunction. (Doc. 11) For the reasons given, the motion will be denied.

**BACKGROUND**

Plaintiff has published legal forms, software and publications under the mark NOLO since 1972. (Doc. 5 at 1) In March of 1994, Plaintiff acquired the internet domain name <nolo.com> and subsequently launched a website at that address. (*Id.*) The website offers articles, forms, online applications, a lawyer directory and other material. (*Id.* at 2)

In 2003, Defendant acquired the domain name <nolo.org> and launched a website at that address.[1] (*Id.* at 3) The website offers an article on "No Losing Options Traders

---

[1] The parties disagree on the date Defendants registered <nolo.org>. The Court does not have sufficient evidence to resolve the dispute at this time.

Organization (NO LO)," (*Id.* at 4), and has a link to another website that sells an option trading course which Defendant has been selling on the internet for 10 years. (Doc. 17 at 3)

In May of 2006, Plaintiffs were granted registration No. 3,126,546 for the mark "NOLO" by the U.S. Patent and Trademark Office (USPTO). (Doc. 5 at 4) The registration covered the use of the mark "NOLO" for three categories of goods and services: computer software for the preparation of legal and business documents, books in the field of law and business topics, and providing information relating to legal affairs.

Three years after registering the NOLO mark, Plaintiff filed this lawsuit against Defendant, claiming trademark infringement, dilution, cybersquatting, and unfair competition. (Doc. 1 at 5-8) Plaintiff seeks injunctive relief, including transfer of the domain <nolo.org> to Plaintiff.

**JURISDICTION**

Plaintiff's claims arising from Title 15 of the United States Code confer subject matter jurisdiction on this Court under 28 U.S.C. 1338(a) and (b).

**ANALYSIS**

Plaintiff seeks a preliminary injunction, and therefore must establish: 1) that Plaintiff is likely to succeed on the merits, 2) that Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, 3) that the balance of equities tips in Plaintiff's favor, and 4) that an injunction is in the public interest. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). During the preliminary injunction hearing, Plaintiff abandoned its request for injunctive relief pursuant to the trademark infringement and dilution claims. Thus, the only issue is whether Plaintiff is entitled to relief based on its cybersquatting claim.

Cybersquatting "occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst.,*

*Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (quotation omitted).  For Plaintiff to succeed on its cybersquatting claim, it must prove (1) the domain name is "identical or confusingly similar to the registered mark"; (2) the mark is "distinctive at the time of the registration of the domain name"; and (3) Defendants have "a bad faith intent to profit" from registration of the domain name.[2]  15 U.S.C. § 1125(d)(1)(A).

### 1. Similarity Of The Marks

The first element of cybersquatting is met in that <nolo.org> is confusingly similar to <nolo.com>.  *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (finding "inconsequential" the differences in "MovieBuff" and "moviebuff.com"); *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270 (4th Cir. 2001) ("[I]t is obvious even to a casual observer that the similarity between vw.net and the VW mark is overwhelming.").

### 2. Nolo Likely Is Distinctive

The second element of cybersquatting is that the mark be "distinctive at the time of the registration of the domain name."  15 U.S.C. § 1125(d)(1).  A mark "is distinctive when it identifies the particular source of the product or distinguishes it from other products."  *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993).  A mark is "inherently distinctive" if it is "arbitrary."  "Arbitrary marks are 'those words . . . which are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services."  *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 n.18 (quoting J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:4 (2d ed. 1984)).  The

---

[2] The two alternative sections of § 1125(d)(1)(A)(ii) are not considered here because they require the mark be famous, a theory Plaintiff disavowed at the preliminary injunction hearing, and Nolo is not one of the marks explicitly protected by statute.

term "nolo" is a pre-existing word (*i.e.*, nolo contendre) but it has no inherent connection to Plaintiff's products. Thus, Nolo likely qualifies as distinctive.[3]

### 3. Plaintiff Has Not Established Bad Faith

The third element of cybersquatting is that Plaintiff establish Defendants had a bad faith intent to profit from the domain name. The statute lists nine non-exclusive factors for a court to consider.[4] Plaintiff did not present sufficient evidence establishing a likelihood of

---

[3] Plaintiff does not argue for distinctiveness under this type of analysis. Instead, Plaintiff argues that the registration of the NOLO mark establishes a presumption of distinctiveness as of 2006. But that evidence does not establish that the mark was distinctive when defendant registered the <nolo.org> domain sometime prior to 2006.

[4] Those factors are:
  (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
  (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
  (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
  (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
  (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
  (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
  (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
  (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such

1 success under these factors. For example, there is some evidence that Defendants offered
2 <nolo.org> for sale, but it is disputed when that offer was made and how long the offer was
3 available. Moreover, there is no admissible evidence establishing Defendants' desire to
4 divert consumers from <nolo.com> and there is no evidence contravening Defendants' claim
5 that <nolo.org> has always offered for sale an options trading program. Plaintiff failed to
6 present admissible evidence establishing a likelihood of success in proving Defendants have
7 acted in bad faith.

8 Even if Plaintiff had established a likelihood of success on its cybersquatting claim,
9 the preliminary injunction would still be denied. It is undisputed that "someone at Nolo first
10 learned about [Defendants'] website some time in 2006." (Doc. 22 at 7) But Plaintiff waited
11 more than three years to file this suit. "Plaintiff's long delay before seeking a preliminary
12 injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v.*
13 *Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Plaintiff did not present an
14 adequate basis for concluding that an additional delay, after the more than three years
15 already accepted by Plaintiff, will result in irreparable harm.

## CONCLUSION

17 Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear
18 showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense*
19 *Council, Inc.*, 129 S. Ct. 365, 376 (2008). Plaintiff has not established that it is likely to
20 prevail on its cybersquatting claim or that it will suffer irreparable harm in the absence of an
21 injunction.

22 Finally, Defendants filed their answer to the complaint on July 10, 2009. Defendants
23 subsequently filed a motion to dismiss. (Doc. 21) The motion to dismiss is untimely and

---

25   domain names, or dilutive of famous marks of others that are famous
     at the time of registration of such domain names, without regard to the
26   goods or services of the parties; and
27   (IX) the extent to which the mark incorporated in the person's domain
     name registration is or is not distinctive and famous . . . .

- 5 -

will be denied. *See Aetna Life Ins. Co. v. Alla Med. Servs, Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988) (observing that a motion under Rule 12(b) may be filed "any time before the responsive pleading is filed").

Accordingly,

**IT IS ORDERED** the Motion for Preliminary Injunction (Doc. 11) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Dismiss (Doc. 19) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion for Hearing Continuance (Doc. 34) is **DENIED AS MOOT**.

DATED this 9th day of September, 2009.

_____
Roslyn O. Silver
United States District Judge